UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN GREGORY THOMAS,

       Petitioner,

                                      Case No. 1:10-cv-1053
v.                                    Hon. Robert J. Jonker

SHIRLEE HARRY,

       Respondent.

_____/

**REPORT AND RECOMMENDATION**

      Steven Gregory Thomas has filed a petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254.  Petitioner is a former prisoner of the Michigan Department of Corrections

(MDOC).[1]

## I.      Background

      The Michigan Court of Appeals summarized the incident which gave rise to Thomas'

convictions as follows:

> Defendant was convicted of assaulting two repossession agents with a
> shotgun when the agents attempted to repossess a van on defendant's property.
> Defendant later left in the van, pursued by the victims and eventually by the police.
> According to police officers, defendant failed to yield to an officer's signal to stop
> his vehicle.  Defendant eventually stopped his van and was pursued on foot.  He was
> eventually apprehended and, according to police officers, resisted efforts to be
> handcuffed and struggled with the officers until he was tasered.  After his arrest, the
> police took defendant to a hospital for medical treatment, after which he was
> released.  Approximately a day and a half after he was arrested, defendant gave a
> statement in which he admitted obtaining a gun from his house after a tow truck

---

[1] MDOC records reflect that petitioner was discharged from prison on May 28, 2013.  *See* petitioner's profile on the MDOC's Offender Tracking Information System (OTIS) at http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=365040.

pulled into his driveway and the driver refused to speak to him to explain what was going on.

Defendant testified at trial that he confronted the two victims with a gun because he thought they were trying to steal his work tools from his van, but denied pointing the gun at either victim. Defendant also denied failing to stop for the police or resisting his arrest

*People v. Thomas*, No. 278956, slip op. at 1 (Mich. App. Oct. 23, 2008) (docket no. 23).

Following a jury trial, petitioner was convicted of two counts of felonious assault, M.C.L. § 750.82, and one count each of possession of a firearm during the commission of a felony, M.C.L. § 750.227b, fourth-degree fleeing or eluding a police officer, M.C.L. § 257.602a(2), and resisting or obstructing a police officer, M.C.L. § 750.81d(1). *Id.* He was sentenced to concurrent prison terms of 23 months to 4 years for each felonious assault conviction and one to two years each for the resisting arrest and fleeing a police officer convictions, to be served consecutively to a two-year term of imprisonment for the felony-firearm conviction. *Id.*

Petitioner, through counsel, raised two issues in his direct appeal to the Michigan Court of Appeals:

I.     Should defendant's convictions be reversed and vacated where he was denied the effective assistance of counsel when his attorney failed to file a motion to suppress his statement and failed to even attempt to suppress his statement?

II.    Should defendant's convictions be reversed and vacated since he was denied due process by having his counsel of choice who was retained to try his case as opposed to substitute counsel when defendant never agreed to his case being handled by an attorney different from the one he had hired along with all of the various stand in attorneys that really did know the case [sic] which also rendered his attorney ineffective?

Petitioner's Brief (docket no. 23).

Petitioner also filed a supplemental *pro se* brief raising three issues (in his words):

2

III. Whether defendant's substantial rights violated contrary to Sixth Amendment to reasonable effective assistance of counsel upon failure to file motion to quash information to invalid complaint.

IV. Whether defendant's deprived of an opportunity to present a complete defense upon multiple representation occurred where no counsel requested jury instructions to defense of property and trial court failed to sua sponte instruct.

V. Whether defendant's right to due process and a fair trial affected by trial court giving a dynamite instruction.

Petitioner's *Pro Se* Brief (docket no. 23).  The Michigan Court of Appeals affirmed the convictions and sentences.  *Thomas*, No. 278956.

 Petitioner raised the same five issues in his *pro se* application for leave to appeal to the Michigan Supreme Court.  *See* Application for leave (docket no. 24).  The Michigan Supreme Court denied the application because it was "not persuaded that the questions presented should be reviewed by this Court."  *People v. Thomas*, No. 137822 (Mich. March 23, 2010) (docket no. 24).

 At the conclusion of his direct appeal, petitioner filed a motion for relief from judgment raising six issues (in his words):

I. Defendant's conviction should be reversed and vacated where he was denied the effective assistance of counsel when his attorney failed to file a motion to suppress his statement and failed to even attempt to suppress his statement

II. Defendant's convictions be reversed and vacated since he was denied due process by having his counsel of choice who was retained to try his case as opposed to substitute counsel when defendant never agreed to his case being handled by an attorney different from the one he had hired along with all of the various stand in attorneys that really didn't know the case which also rendered his attorney ineffective.

III. Defendant's conviction should be reversed because the issue of the confession's voluntariness was not resolved at the trial court level because there was no evidentiary hearing to determine whether the

3

confession by Mr. Thomas was obtained illegally and should have been suppressed.

IV.  The trial court's erroneous deprivation of a criminal defendant's Sixth Amendment right to counsel of choice entitles his reversal of his conviction because the removal by a trial court of a criminal defendant's counsel of choice for any reason other than gross incompetence, physical incapacity or contumacious conduct after adversary judicial proceeding have been initiated violated the defendant's constitutional right to counsel of his choice.

V.  Mr. Thomas was denied the constitutional right to confront officers Shafer, Kitzler and Officer Livingston as witnesses against him because they were the initial officers who actually arrested Mr. Thomas at gun point and read him his Miranda rights and transported him to the hospital to be treated for his injuries.  Their testimony was material, relevant and would have been favorable to in determining the outcome of the trial because they read Mr. Thomas his Miranda rights and any questioning by Detective Karl's never should have occurred leading to the suppression of Mr. Thomas's confession.

VI.  Defendant was denied the effective assistance of appellate counsel where his appellate attorney did not raise the above issues in his appeal by right.

Petitioner's Motion for relief from judgment (docket no. 21).

The trial judge denied the motion, addressing petitioner's claims as follows:

Defendant's motion sets forth six bases for relief: 1. Ineffective assistance of trial counsel for trial counsel's failure to move to suppress defendant's statement; 2. Defendant's due process rights denied by his failure to have "counsel of choice;"  3. Trial counsel's ineffectiveness in failing to resolve the voluntariness of defendant's statement prior to trial; 4. Another complaint relating to defendant being represented by substitute counsel at trial due to the medical incapacity of his original lawyer;  5. Another but largely incoherent claim relating to the allegedly wrongful admission of his statement.

Every single one of those issues was raised by defendant's appellate attorney on appeal and dealt with exhaustively in the Court of Appeal's opinion.  The Court of Appeals rejected all of those arguments in affirming defendant's conviction. Defendant does not claim nor does there appear to be a retroactive change in the law which should undermine the prior decision of the Michigan Court of Appeals, so this

4

court is precluded from entertaining those claims in the defendant's Motion for Relief From Judgment pursuant to MCR 6.508(D)(1).

Defendant's sixth basis for relief claimed is that he was ". . . denied the effective assistance of appellate counsel where his appellate attorney did not raise the above issues in his appeal by right."   That is clearly not the case.  Defendant's appellate attorney raised all of the issues on appeal that defendant continues to assert, so there is clearly no ineffective assistance of appellate counsel.

Defendant's Motion for Relief From Judgment is denied summarily pursuant to MCR 6.504(B)(2).

Order (August 4, 2009) (docket no. 1-10).

Petitioner raised these six issues in an application for leave to appeal the August 4, 2009 order to the Michigan Court of Appeals, which that Court denied because he failed to meet the burden of establishing entitlement to relief under MCR 6.508(D).  *See People v. Thomas*, No. 294014 (Mich. App. Jan. 21, 2010) (docket no. 21).

Petitioner filed an application for leave to appeal the August 4, 2009 order to the Michigan Supreme Court raising these six issues along with a new issue:

VII.   The trial court abused its discretion by removing sua sponte the defendant's paid counsel of choice without an inquiry or hearing and replacing him with court appointed counsel even thought the defendant did not specifically object.

Petitioner's Application for leave to appeal (docket no. 22).  The Michigan Supreme Court denied the application because petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. Thomas*, No. 140609 (Mich. Sept. 27, 2010) (docket no. 22).

Now, Thomas has filed a habeas petition in this Court pursuant to § 2254 raising six issues (in his words):

I.   Defendant's conviction should be reversed and vacated where he was denied the effective assistance of counsel when his attorney failed to

5

file a motion to suppress his statement and failed to even attempt to suppress his statement

II. Defendant's convictions be reversed and vacated since he was denied due process by having his counsel of choice who was retained to try his case as opposed to substitute counsel when defendant never agreed to his case being handled by an attorney different from the one he had hired along with all of the various stand in attorneys that really didn't know the case which also rendered his attorney ineffective.

III. Defendant's conviction should be reversed because the issue of the confession's voluntariness was not resolved at the trial court level because there was no evidentiary hearing to determine whether the confession by Mr. Thomas was obtained illegally and should have been suppressed.

IV. The trial court's erroneous deprivation of a criminal defendant's Sixth Amendment right to counsel of choice entitles his reversal of his conviction because the removal by a trial court of a criminal defendant's counsel of choice for any reason other than gross incompetence, physical incapacity or contumacious conduct after adversary judicial proceeding have been initiated violated the defendant's constitutional right to counsel of his choice.

V. Mr. Thomas was denied the constitutional right to confront officers Shafer, Kitzler and Officer Livingston as witnesses against him because they were the initial officers who actually arrested Mr. Thomas at gun point and read him his Miranda rights and transported him to the hospital to be treated for his injuries. Their testimony was material, relevant and would have been favorable to in determining the outcome of the trial because they read Mr. Thomas his Miranda rights and any questioning by Detective Karl's never should have occurred leading to the suppression of Mr. Thomas's confession.

VI. Defendant was denied the effective assistance of appellate counsel where his appellate attorney did not raise the above issues in his appeal by right.

Petition (docket nos. 1 and 1-13).

## II.      Procedural Default

Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996).  Not every state procedural rule will warrant application of the procedural default doctrine.  Only a state procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine.  "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

Here, respondent contends that Issues II and IV are procedurally defaulted and not subject to federal habeas review because petitioner failed to object to the counsel who represented him after his retained counsel became incapacitated.  Respondent's Answer at p. 22.  The circumstances surrounding the incapacity of petitioner's retained counsel, and the substitution of other counsel, are discussed at length in Section IV. B., *infra.*  While the habeas petition subdivided the "choice of counsel" claim into two issues, the Michigan Court of Appeals addressed "choice of counsel" as a single issue on direct appeal, found that the issue was waived because petitioner did

not comply with the state's contemporaneous-objection rule, and then reviewed the issue for plain error only. *See People v. Thomas,* No. 278956, slip op. at pp. 4-5.   "[A] state court's plain error analysis does not save a petitioner from procedural default.  Plain error analysis is more properly viewed as a court's right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the merits." *Lundgren v. Mitchell*,  440 F.3d 754, 765 (6th Cir. 2006) (citations omitted). *See also, Paprocki v. Foltz*, 869 F.2d 281, 284-285 (6th Cir. 1989) (limited review of an issue to prevent manifest injustice does not constitute a waiver of the procedural default).   In addition, petitioner's Issue V, which petitioner raised for the first time on his motion for relief from judgment, may be subject to procedural default.  While the state trial judge construed this "largely incoherent claim" as an extension of the suppression argument, finding that the Michigan Court of Appeals addressed this issue on the direct appeal, petitioner's reference to the Confrontation Clause in Issue V suggests that this was a separate constitutional claim subject to the procedural default analysis.

Habeas review of a procedurally defaulted claim is precluded  unless petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.  "[T]he existence of cause for a procedural default must turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Here, petitioner has raised an ineffective assistance of appellate counsel claim which, if successful, could serve as both an independent claim of error and as cause to excuse the procedural defaults.

Nevertheless, federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits.   Judicial economy might counsel addressing the merits of a procedurally defaulted claim "if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).  This is such a case, given the procedural background with respect to Issues II, IV and V.  *See Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010) ("[w]e cut to the merits here, since the cause-and-prejudice analysis adds nothing but complexity to the case"); *Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (the court may proceed to decide the merits of a procedurally defaulted habeas claim where "the question of procedural default presents a complicated question of Michigan law and is unnecessary to [the] disposition of the case"). Accordingly, the Court will address petitioner's claims on the merits.

### III.     Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   The federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 776, 773 (2010) (internal quotation marks and citations omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, -- U.S.-- , 131 S. Ct. 770, 786 (2011). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* The AEDPA's deferential standard "requires Petitioner to show 'the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing [Supreme Court precedent] beyond any possibility for fairminded disagreement.'" *Blackmon v. Booker*, 696 F.3d 536, 538 (6th Cir. 2012), quoting *Harrington* , 131 S. Ct. at 786-87. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 131 S. Ct. at 786. "If this standard is difficult to meet, that is because it was meant to be." *Id.*

Under the "contrary to" clause of § 2254(d)(1), "a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir. 2011), citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause of § 2254(d)(1), "a federal court may grant the writ only if the state court

10

identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id*. A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id.* at 409.

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001). The presumption of correctness accorded to a state court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

### IV. Discussion

### A. Ineffective assistance of trial counsel related to the suppression of petitioner's confession (Issues I and III)

Petitioner contends that his trial counsel was ineffective for failing to file a motion to suppress his statement made to the police. Inskter Police Officer Kritzer testified that when he arrived on scene of the pursuit, Police Officer Livingston had petitioner at gunpoint and told him to get down. Trial Trans. at pp. 61-63 (May 30, 2007) (docket no. 18). Other officers got petitioner down on the ground, where he was kicking. *Id.* at p. 63. Kritzer told petitioner to stop resisting or he would be tasered. *Id.* The trial record reflects that when the police officers caught up with Petitioner would not stop resisting the officers so Kritzer tasered him about two seconds in the side.

*Id.*  Kritzer told petitioner to stop resisting and tased him in the small of the back.  *Id.* at pp. 63-64.  Petitioner still would not get up, continued kicking and refused to give his hands to the other officers for handcuffing.  *Id.* at p. 64.   Petitioner was handcuffed, at which time Officer Kritzer noticed that petitioner's "eye was bleeding pretty bad."  *Id.*   Because a rescue vehicle was unavailable, Kritzer and his partner transported petitioner to the hospital in their patrol vehicle.  *Id.* at pp. 64-65.   Petitioner did not have to stay overnight and came back to the Inkster Police Department with Kritzer and his partner.  *Id.* at p.65.

Inkster Police Detective Robert Karls gave the following testimony regarding petitioner's confession.  The day after petitioner was apprehended, Detective Karls read petitioner his *Miranda* rights and tried to obtain a confession from him.  *Id.* at p. 90.   Petitioner stated that he could not read or write.  *Id.* at pp. 90-91.  For this reason,  Karls had another detective, Brian Dennis, act as a witness when Karls read petitioner his rights.  *Id.*  Petitioner initialed the rights read to him on the form.  *Id.* at pp. 91-93.  Petitioner then asked Karls to write down his statement.  *Id.* at p. 93.  Karls wrote it out, petitioner signed it, and then Karls read it to petitioner in the presence of Detective Dennis.  *Id.* at pp. 93-94.  Petitioner did not ask for an attorney during the questioning.  *Id.* at p. 94.  Petitioner was fed and had been in police custody for a day and a half prior to giving his statement.  *Id.*

The  written statement was as follows:

I was working on my house when a tow truck pulled up.  I went outside and spoke to the tow truck driver.  He refused to speak with me.  I went inside the house and got my shotgun because the driver refused to speak with me and I didn't know what was going on.

> The driver backed out of the driveway, still not explaining to
> me what was going on.  I put the gun back into the house and drove
> off in my van.  The police tried to stop me and I was scared.

*Id.* at pp. 93-94; *People v. Thomas*, No. 278956, slip op. at p. 3.

At his trial, petitioner gave the following testimony with respect to his statement.
According to petitioner, the last sentence in his statement, "[t]he police tried to stop me and I was
scared," was not true.  Trial Trans. at pp. 220, 222 (May 30, 2007).  When asked at trial why he
made this statement, petitioner testified:

> Because I was -- I felt like I was pressured in that statement.  I was
> distraught.  I was beat up.  I was tazed.  I wasn't thinking in my right mind.  I was
> feeling like I was forced.

*Id.* at p. 220.  Petitioner also disputed the phrase "I was working on my house" when the tow truck
pulled up.  *Id.* at p. 222.  Rather, petitioner stated that "I was in my home preparing myself for a
job" when the tow truck pulled up.  *Id.*

Petitioner testified that he gave the statement two days after the incident.  *Id.* at p.
221.  When asked if the police made up the statement and forced him to sign it, petitioner testified:

> Sir, I don't know what's on that statement.  Only thing I knew was that I was
> so distraught and really couldn't even see.

*Id.* at p. 223.  While petitioner admitted that he signed the statement, he did not give direct answers
when asked if Detective Karls read the statement to him.  *Id.* at pp. 223-24.

The Michigan Court of Appeals addressed this issue as follows:

> Defendant argues that trial counsel was ineffective for failing to move to
> suppress his police statement on the ground that it was not given voluntarily.  We
> disagree.

> Because defendant did not raise an ineffective assistance issue in the trial
> court, our review is limited to errors apparent from the record.  *People v. Matuszak*,
> 263 Mich. App. 42, 48, 687 N.W.2d 342 (2004).  To establish ineffective assistance

13

of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness and that the representation so prejudiced defendant that he was denied a fair trial. *People v. Pickens*, 446 Mich. 298, 338, 521 N.W.2d 797 (1994). Defendant must overcome the presumption that the challenged action was sound trial strategy. *People v. Tommolino*, 187 Mich.App. 14, 17, 466 N.W.2d 315 (1991). To establish prejudice, defendant must show that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *People v. Johnson*, 451 Mich. 115, 124, 545 N.W.2d 637 (1996). He must also show that the proceedings that took place were fundamentally unfair or unreliable. *People v. Rodgers*, 248 Mich.App. 702, 714, 645 N.W.2d 294 (2001).

The record does not factually support defendant's argument that his police statement was not voluntarily made. In *People v. Tierney*, 266 Mich.App. 687, 707-708, 703 N.W.2d 204 (2005), this Court explained:

> The right against self-incrimination is guaranteed by both the United States Constitution and the Michigan Constitution. US Const, Am V; Const 1963, art 1, § 17; *People v. Cheatham*, 453 Mich. 1, 9, 551 N.W.2d 355 (1996) (opinion by Boyle, J.). Statements of an accused made during a custodial interrogation are inadmissible unless the accused voluntarily, knowingly, and intelligently waives that Fifth Amendment right. . . . The prosecutor must show by a preponderance of the evidence that the defendant knowingly, intelligently, and voluntarily waived his Fifth Amendment right. *People v. Daoud*, 462 Mich. 621, 634, 614 N.W.2d 152 (2000). Whether a defendant's statement was knowing, intelligent, and voluntary is a question of law, which the court must determine under the totality of the circumstances. *Cheatham*, *supra* at 27, 551 N.W.2d 355. . . . Whether a statement was voluntary is determined by examining police conduct[.] . . .
>
> This Court reviews de novo the question of voluntariness. *People v. Sexton (After Remand)*, 461 Mich. 746, 752, 609 N.W.2d 822 (2000). . . . However, deference is given to the trial court's assessment of the weight of the evidence and the credibility of the witnesses, *id.*, and the trial court's findings will not be reversed unless they are clearly erroneous and leave "this Court with a definite and firm conviction that a mistake was made." *People v. Shipley*, 256 Mich.App. 367, 372-373, 662 N.W.2d 856 (2003). . . .
>
> In determining voluntariness, the court should consider all the circumstances, including: "[1] the age of the accused; [2] his lack of education or his intelligence level; [3] the extent of his previous experience with the police; [4] the repeated and prolonged nature of

14

the questioning; [5] the length of the detention of the accused before he gave the statement in question; [6] the lack of any advice to the accused of his constitutional rights; [7] whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; [8] whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; [9] whether the accused was deprived of food, sleep, or medical attention; [10] whether the accused was physically abused; and [11] whether the suspect was threatened with abuse." *People v. Cipriano*, 431 Mich. 315, 334, 429 N.W.2d 781 (1988). No single factor is determinative. *Sexton*, *supra* at 753, 609 N.W.2d 822. "The ultimate test of admissibility is whether the totality of the circumstances surrounding the making of the confession indicates that it was freely and voluntarily made." *Cipriano*, *supra* at 334, 429 N.W.2d 781.

According to the detective who took defendant's statement, defendant stated that he could not read or write, so the detective, in the presence of another officer, read defendant his rights. Defendant thereafter signed the advice of rights form. Defendant then gave a statement, which the detective wrote out and read to defendant. . . .

Although there was evidence that defendant was injured during his arrest, he was promptly taken to a hospital, treated for his injuries, and released. Defendant's statement was not given until almost two days after he was arrested. The record does not support a causal connection between defendant's treatment at the time of his arrest and the giving of his statement. *See People v. Wells*, 238 Mich. App. 383, 389-390, 605 N.W.2d 374 (1999). Further, although defendant claimed at trial that he was still distraught when he gave his statement, there is no evidence that any police misconduct or coercion was used to obtain the statement. Defendant emphasizes that he is unable to read or write, but the record discloses that the officer verbally read defendant his rights and that defendant signed the advice of rights form before he gave a statement. In sum, there is no support in the record for defendant's claim that his statement was not voluntarily given. Accordingly, there is no basis for concluding that defense counsel was ineffective for failing to seek suppression of the statement. Counsel is not required to file a futile motion. *People v. Darden*, 230 Mich.App. 597, 605, 585 N.W.2d 27 (1998).

Furthermore, defendant was not prejudiced by the admission of his statement. Defendant admitted at trial that the majority of the statement was accurate. The only portion that he identified as inaccurate was the part indicating that he had been working on his house when the tow truck pulled up. Defendant claimed that he instead told the detective that he was preparing to go to work before the tow truck arrived. This minor discrepancy was immaterial to the determination regarding whether defendant committed the charged offenses. Because defendant's trial

15

testimony was largely cumulative of his statement, there is no reasonable probability that the outcome of the trial would have been different if the statement had been suppressed. *See People v. McRunels*, 237 Mich.App. 168, 184-185, 603 N.W.2d 95 (1999).

*People v. Thomas*, No. 278956, slip op. at pp. 2-4 (footnote omitted).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687. In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. "[T]he threshold issue is not whether [petitioner's] attorney was inadequate; rather, it is whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (emphasis in original), *cert. denied* 508 U.S. 975 (1993). Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Strickland*, 466 U.S. at 689-690.

The Sixth Circuit set forth the factors which a court considers to determine whether a valid waiver of *Miranda* rights occurred:

In *Miranda v. Arizona*, 384 U.S. 436, 478, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held that under the Fifth Amendment, a suspect may not be subjected to custodial interrogation until he has been informed that he has a right to counsel, that he has a right to remain silent, and that anything he says can be used against him in a court of law. To be valid, a waiver of these rights must be

voluntary, knowing, and intelligent. *Colorado v. Spring*, 479 U.S. 564, 573, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987). To determine whether a waiver is valid, courts examine the totality of the circumstances. *Fare v. Michael C.*, 442 U.S. 707, 724–25, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979) (citing *Miranda*, 384 U.S. at 475–77, 86 S.Ct. 1602). Courts consider a number of factors, including "the age, education, and intelligence of the suspect; whether the suspect was advised of his *Miranda rights*; the length of the questioning; and the use of physical punishment or the deprivation of food, sleep or other creature comforts." *Jackson v. McKee*, 525 F.3d 430, 433–34 (6th Cir.2008) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). "A confession is involuntary only if there is (1) police coercion or overreaching which (2) overbore the accused's will and (3) caused the confession." *Hill v. Anderson*, 300 F.3d 679, 682 (6th Cir.2002) (citing *Colorado v. Connelly*, 479 U.S. 157, 165–66, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986)).

*Moore v. Mitchell*, 708 F.3d 760, 808 (6th Cir. 2013).

Here, the Michigan Court of Appeals reviewed the appropriate factors to determine that petitioner's statement was voluntary. The appellate court's determination that "there is no support in the record for defendant's claim that his statement was not voluntarily" was not objectively unreasonable. Under the totality of the circumstances, the Michigan Court of Appeals could properly find that petitioner's statement was voluntary. The Supreme Court "has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Counsel cannot be ineffective for failing to raise meritless or futile objections. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial"); *United States v. Sanders*, 165 F.3d 248, 253 (3rd Cir. 1999) ("[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument"); *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("[c]ounsel was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel"); *Lilly v.*

*Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993) ("[t]he Sixth Amendment does not require counsel . . . to press meritless issues before a court").[2]

The Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on this claim.

### B.    Petitioner's choice of counsel (Issues II and IV)

Petitioner contends that the trial court violated his Sixth Amendment rights when it appointed new counsel to represent him at trial after petitioner's retained counsel became incapacitated. The record reflects that petitioner had four attorneys in this matter. Petitioner retained Attorney David Braxton, who appeared at the preliminary examination. *See* Prelim. Exam. Trans. (Feb. 7, 2007) (docket no. 12); Register of Actions (reflecting "Appearances by a Retained Attorney Filed" on January 24, 2007) (docket no. 11). Attorney Maria Mannarino, appeared at the arraignment. *See* Arraign. Trans. (Feb. 23, 2007) (docket no. 13). At that time, Ms. Mannarino advised the court that she was "standing in for his attorney of record, David Braxton, with Mr. Thomas' consent." *Id.* at p. 3. Ms. Mannarino also advised the court that Attorney Braxton was in the hospital, and, on his behalf, asked the court to keep the case on track for trial, with flexible or long range dates so that Attorney Braxton could return and be brought back up to speed. *Id.* at pp.

---

[2] Furthermore, even if the Court assumed that petitioner's counsel had a legal basis to challenge the admissibility of the statement (an assumption not supported by the record), the Court agrees with the Michigan Court of Appeals' conclusion that petitioner would not have been prejudiced by counsel's failure to challenge the statement. The Court notes that while the Michigan Court of Appeals identified only one statement which petitioner testified was untrue ("I was working on my house"), petitioner also testified that a second sentence was untrue ("[t]he police tried to stop me and I was scared"). Nevertheless, petitioner testified that he signed the statement as transcribed by Detective Karls. Trial Trans. at p. 223 (May 30, 2007).

3-4.).  On March 30, 2007, Attorney Delphia Burton appeared at the final conference, advising the court that she was "standing in for his attorney of record, David Braxton, with Mr. Thomas' consent".  Final Conf. Trans. at p. 3 (March 30, 2007) (docket no. 14).  Attorney Burton further advised the court that Attorney Braxton was unavailable, having had a lengthy stay in the hospital and then having been "rushed back" to the hospital about a week after his release.  *Id.* at p.3.

Attorney Sharon Clark-Woodside appeared at a subsequent "final conference" held on April 27, 2007, stating that she was "appearing on behalf of Mr. Thomas."  Final Conf. Trans. at p. 3 (April 27, 2007) (docket no. 15).  At that time, the court noted that there was a trial date of May 29, 2007, and stated that Attorney Clark-Woodside would be back for a "special pretrial conference" on May 22, 2007.  *Id.* at p. 3.  The conference was actually held on May 23, 2007, at which time Attorney Clark-Woodside advised the court that she was substituting in for Attorney Braxton "due to his continued illness."  Proceedings Trans. at p. 3 (May 23, 2007) (docket no. 16).

The trial commenced on May 29, 2007, with Attorney Clark-Woodside representing petitioner.  Trial Trans. (May 29, 2007).  Prior to commencement of the trial, the court understood that the parties had reached a resolution.  *Id.* at pp. 3-5.  However, petitioner rejected the plea deal stating "Let's go to trial."  *Id.* at p. 5.  Attorney Clark-Woodside represented petitioner throughout the trial.  *See* Trial Trans. (May 29, 2007); Trial Trans. (May 30, 2007) (docket no. 18); and Trial Trans. (May 31, 2007) (docket no. 19).  Petitioner retained a new attorney for sentencing, Lowell Friedman.  *See* Sent. Trans. (June 15, 2007) (docket no. 20); Register of Actions (reflecting "Appearance By A Retained Attorney Filed" on June 15, 2007).

Contrary to petitioner's claim that the court appointed Attorney Clark-Woodside to represent him at trial, *see* Petitioner's Motion for Relief from Judgment ¶ 1 (docket no. 1-9 at p. 6),

there is no record before the Court that the state trial court entered an order appointing Attorney Clark-Woodside to represent him.[3]  On the contrary, the Michigan Court of Appeals explicitly found that "Woodside was not an appointed attorney."  *People v. Thomas*, No. 278956, slip op. at p. 5. Petitioner has submitted a copy of a handwritten letter from Attorney Braxton.  *See* Braxton Letter (docket no. 1-9 at pp. 79-82).  This letter appears to be Braxton's response to an attorney grievance which petitioner filed against him.  In the letter, Mr. Braxton states that he became ill with acute pancreatitis in February 2007, was placed in a medically induced coma until April 2007 and underwent eight surgical procedures during this period.  *Id.*  Attorney Braxton's partner advised petitioner that he (Braxton) would be unable to represent him and that "[a]n attorney was assigned to represent Mr. Thomas."  *Id.*  Nothing in this letter indicates that this was a court appointed attorney as opposed to attorney who agreed to represent petitioner in Attorney Braxton's stead.

In petitioner's brief on appeal prepared by his appellate attorney, there is no mention of any court appointed attorneys, only that "[i]f Mr. Braxton was not capable of handling the matter, then Mr. Thomas should have been informed of that fact and allow [sic] Mr. Thomas the opportunity to hire another attorney of his choice."  Petitioner's Brief on Appeal at pp. 22-23 (docket no. 1-5 at pp. 23-24).  The trial court *did* appoint Attorney Robert J. Boyd, III to represent petitioner on his direct appeal.  *See* Order Appointing Counsel (June 25, 2007) (docket no. 23); Defendant's Brief on Appeal (docket no. 23).

---

[3] The Court notes that the state court's Register of Actions does not include an order appointing Attorney Clark-Woodside.  The Register of Actions does include  an "Order Payment of Attorney Fees Signed and Filed" on June 15, 2007, but there is no record of who was paid.  The Register of Actions includes a subsequently filed "MOTION TO DELETE ATTORNEY FEES" (capitalization in original) granted on May 30, 2008.

In an affidavit filed in his direct appeal to the Michigan Court of Appeals, petitioner voiced a number of complaints regarding his attorneys.  For example, petitioner stated: that he "never heard from Mr. Braxton after the preliminary exam;" that "[w]ithout anyone explaining anything to me, I kept getting different attorneys that were standing in on my case;" and that "[e]ach time I was in court, I had a different attorney representing me and they never really knew anything about my case and said they were just standing in."  Affidavit at ¶¶ 2-5 (docket no. 1-9).[4]  Petitioner goes on to state "I did not know who Ms. Woodside was, I did not hire her and I did not want her to represent me."  *Id.* at ¶ 7.

The Michigan Court of Appeals addressed the choice of counsel claim as follows:

Defendant originally retained attorney David Braxton to represent him. Braxton represented defendant at the preliminary examination, but, with defendant's consent, two other attorneys represented defendant at the next two hearings because Braxton had been hospitalized and was unable to appear.  A third attorney, Woodside, represented defendant at trial because of Braxton's continuing incapacity. Notably, Woodside also represented defendant at two pretrial conferences dating back to one month before trial.  Although defendant never consented on the record to Woodside's representation, he never objected or voiced any disagreement with her representation either. [FN 2]

At the root of the Sixth Amendment's right to counsel is the right of a defendant to select counsel of his own choosing.  *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147-148, 126 S.Ct. 2557, 2563, 165 L.Ed.2d 409 (2006).  Therefore, a defendant who does not require the appointment of counsel has the right to choose who will represent him.  *Id.* at 144.  A violation of a defendant's right to counsel is established when the defendant is erroneously prevented from being represented by his lawyer of choice, regardless of the quality of representation he may receive from another lawyer.  *Id.* at 148.  However, the right is not absolute and may be circumscribed in different ways.  *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).  Trial courts maintain the authority to establish criteria for lawyers who appear before them, and may remove a defendant's attorney based on "gross incompetence, physical incapacity, or contumacious conduct."

---

[4] Petitioner's statement that "[e]ach time I was in court, I had a different attorney" is untrue.  As discussed, Attorney Clark-Woodside represented petitioner at two pre-trial conferences and all three days of trial.

*People v. Coones*, 216 Mich.App. 721, 728-729, 550 N.W.2d 600 (1996); *see also Wheat*, *supra* at 159.

In this case, the record discloses that defendant's original retained attorney, Braxton, was unavailable because of physical incapacity. More significantly, there is no indication in the record that the trial court interfered with defendant's choice of counsel. Woodside stated on the record that she was brought into the case because of Braxton's health problems. Although defendant asserts that he did not consent on the record to Woodside's representation, Woodside was not an appointed attorney and there is no indication that the trial court compelled Woodside to represent defendant against defendant's wishes. Further, defendant never asked that the trial be adjourned or delayed to enable him to proceed with Braxton or another attorney of his choosing. For these reasons, defendant has not established that his right to counsel of his choice was violated.

In addition, nothing in the record supports defendant's claim that he was denied the effective assistance of counsel merely because he was represented by different attorneys throughout this case. As explained elsewhere in this opinion, there is no merit to defendant's specific claims of ineffective assistance of counsel, and defendant does not explain what else his attorneys should have done differently.

> [FN2. Defendant's reliance on MCR 6.005(E) is misplaced. That rule addresses a trial court's obligation to advise a defendant of the right to counsel where the defendant decides to waive the assistance of counsel. Because defendant never waived his right to counsel, the rule is not applicable.]

*People v. Thomas*, No. 278956, slip op. at pp. 4-5.

A criminal defendant's right to retain counsel of choice was set forth in *Serra v. Michigan Department of Corrections*, 4 F.3d 1348 (6th Cir. 1993):

> The Sixth Amendment right to assistance of counsel is a fundamental right so essential to a fair trial that it is part of the Due Process Clause of the Fourteenth Amendment and thus applicable to the states. *Gideon v. Wainwright*, 372 U.S. 335, 344–45, 83 S.Ct. 792, 796–97, 9 L.Ed.2d 799 (1963). The right to the assistance of counsel at trial does not guarantee that a criminal defendant will be represented by a particular attorney. *Caplin & Drysdale v. United States*, 491 U.S. 617, 624, 109 S.Ct. 2646, 2651, 105 L.Ed.2d 528 (1989). A criminal defendant who desires and is financially able to retain his own counsel "should be afforded a fair opportunity to secure counsel of his own choice." *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932).

While a criminal defendant who can afford his own attorney has a right to his chosen attorney, that right is a qualified right. *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988). The trial court "must recognize a presumption in favor of [a defendant's] counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict. The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court." *Id.* at 164, 108 S.Ct. at 1700.

*Serra*, 4 F.3d at 1351.

In this case, there is no record that the state trial court took any action to deprive petitioner of his counsel of choice. Petitioner's retained counsel, Mr. Braxton, was unable to represent him past the preliminary examination due to medical problems. While petitioner now claims that his right to retain his counsel of choice was violated, there is no record that he complained to the court or objected to his representation by attorneys Mannarino, Burton or Clark-Woodside. Accordingly, petitioner's claim that the state trial court violated his Sixth Amendment right to retain his counsel of choice should be denied.[5]

The Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on this claim.

## C.     Petitioner's right of confrontation (Issue V)

Finally, petitioner contends that he was denied the right to confront three police officers involved in his arrest, Officers Kirtzer (Kritzer), Shafer and Livingston, and Detective Karl

---

[5] As discussed, there is no record in this court that the trial court entered an order appointing Attorney Clark-Woodside to represent petitioner. However, if such an appointment had occurred, petitioner could not complain about his choice of counsel. "Indigent defendants do not have the right to counsel of their choice." *Wilson v. Parker*, 515 F.3d 692, 696 (6th Cir. 2008).

(Karls).  *See* Motion for relief from judgment at pp. 44-45 (docket no. 1-9).  Petitioner contends that

these four officers had two ulterior motives for not testifying at trial, i.e., "(1) cover up the beating

of Mr. Thomas and (2), prevent any record testimony in open court pertaining to the fact that Mr.

Thomas was read his Miranda [sic] Rights by Officer Livingston once he was arrested and Officer

Shafer and Kirtzler once Mr. Thomas was taken to the hospital."  *Id.* at p. 44.  Petitioner further

states that his counsel "could not cross-examine these officers to reveal this."  As discussed, *supra*,

this issue was raised in the motion for relief from judgment and construed by the state trial court as

an extension of petitioner's claim that his statement should have been suppressed.

> The Sixth Amendment provides in pertinent part that, "In all criminal prosecutions,

the accused shall enjoy the right . . . to be confronted with the witnesses against him" and "to have

compulsory process for obtaining witnesses in his favor."  "The Sixth Amendment's right of an

accused to confront the witnesses against him is . . . a fundamental right and is made obligatory

on the States by the Fourteenth Amendment."  *Pointer v. Texas*, 380 U.S. 400, 403 (1965).

> The Confrontation Clause of the Sixth Amendment guarantees the right of an
> accused in a criminal prosecution 'to be confronted with the witnesses against him.'"
> *Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).
> However, "trial judges retain wide latitude insofar as the Confrontation Clause is
> concerned to impose reasonable limits on such cross-examination based on concerns
> about, among other things, harassment, prejudice, confusion of the issues, the
> witness' safety, or interrogation that is repetitive or only marginally relevant."  *Id.*
> at 679, 106 S.Ct. 1431.

*United States v. Adams*, 722 F.3d 788, 834 (6th Cir. 2013).   "At the core of the Confrontation

Clause is the right of every defendant to test the credibility of witnesses through cross-examination."

*Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000).  "Generally speaking, the Confrontation Clause

guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective

in whatever way, and to whatever extent, the defense might wish."  *Delaware v. Fensterer*, 474 U.S.

15, 20 (1985) (emphasis in original).  The erroneous exclusion of evidence in violation of the right to confront witnesses guaranteed by the Sixth Amendment is subject to harmless-error analysis. *Neder v. United States*, 527 U.S. 1, 18 (1999).  *See, e.g., Farley v. Lafler*, 193 Fed. Appx. 543, 546 (6th Cir. 2006) (where it was apparent that the proposed questions were only marginally relevant, any possible error by the trial court in preventing the line of cross-examination was harmless).

Here, petitioner's Confrontation Clause argument appears to confuse his Sixth Amendment right to confront witnesses against him with his Sixth Amendment right to call his own witnesses and present a defense.  "The right of an accused to present a defense in a criminal trial derives from the Compulsory Process Clause of the Sixth Amendment to the U.S. Constitution." *Ferensic v. Birkett*, 501 F.3d 469, 475 (6th Cir. 2007).  As the Supreme Court stated in *Taylor v. Illinois*, 484 U.S. 400 (1988):

> The right to compel a witness' presence in the courtroom could not protect the integrity of the adversary process if it did not embrace the right to have the witness' testimony heard by the trier of fact.  The right to offer testimony is thus grounded in the Sixth Amendment even though it is not expressly described in so many words:
>
> > "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies.  Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense.  This right is a fundamental element of due process of law."  *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967).

*Taylor*, 484 U.S. at 409.

Nothing in the record indicates that petitioner's counsel was prevented from calling Detective Karls or Officers Kritzer, Shafer and Livingston as witnesses to establish a defense.

25

Furthermore, Detective Karls and Officer Kritzer testified for the prosecution and were, in fact, cross-examined by petitioner's counsel. *See* Trial Trans. at pp. 61-76 and 86-99 (May 30, 2007). It was not necessary for the prosecutor to call Officers Shafer and Livingston to establish its case against petitioner. However, after petitioner testified, prosecutor called Detective Brian Dennis as a rebuttal witness to testify that Detective Karls read petitioner his *Miranda* rights, that Detective Karls read the statement to petitioner; that petitioner signed the statement; that he observed "nothing out of the ordinary" with petitioner's demeanor when he signed the statement; and that petitioner did not say "that he didn't want to sign the statement." Trial Trans. at pp. 16-22 (May 31, 2007). In addition, Detective Dennis was cross-examined by petitioner's counsel. *Id.* Petitioner was not denied his rights under the Confrontation Clause. Accordingly, this claim should be denied.

### D. Ineffective Assistance of Appellate Counsel (Issue VI)

Petitioner raised two issues with respect to ineffective assistance of appellate. First, petitioner claims that appellate counsel's brief contained an erroneous citation to a Michigan Court Rule (MCR) related to the choice of counsel claim. Second, petitioner claims that appellate counsel erred by failing to raise a Fifth Amendment claim to suppress his statement.

### 1. Erroneous citation to MCR 6.005(E)

MCR 6.005(E) provides as follows:

**(E) Advice at Subsequent Proceedings.** If a defendant has waived the assistance of a lawyer, the record of each subsequent proceeding (e.g., preliminary examination, arraignment, proceedings leading to possible revocation of youthful trainee status, hearings, trial, or sentencing) need show only that the court advised the defendant of the continuing right to a lawyer's assistance (at public expense if the defendant is indigent) and that the defendant waived that right. Before the court begins such proceedings,

(1) the defendant must reaffirm that a lawyer's assistance is not wanted; or

26

> (2) if the defendant requests a lawyer and is financially unable to retain one, the court must appoint one; or

> (3) if the defendant wants to retain a lawyer and has the financial ability to do so, the court must allow the defendant a reasonable opportunity to retain one.

The court may refuse to adjourn a proceeding to appoint counsel or allow a defendant to retain counsel if an adjournment would significantly prejudice the prosecution, and the defendant has not been reasonably diligent in seeking counsel.

MCR 6.005(E).

Here, appellate counsel cited MCR 6.005(E) as one of several supporting citations

at p. 23 of his brief:

> Case law is clear that the right to counsel includes a defendant's right to obtain counsel of his own choosing. The constitutional right to counsel encompasses the right of an accused, who is financially able, to a fair opportunity to secure counsel of his own choice. Further, the Michigan Constitution and statute specifically guarantee the right of an accused to retain counsel of his choice. Const 1963, Art 1 Sec 13, Const 1963, Art 1 Sec 20, US Const, Am 14, US Const, Am 6, MCL 763.1, *People v Fett*, 257 Mich App 76; 666 NW2d 676 (2003), vac'd and rem'd 469 Mich 913; 670 NW2d 224 (2003), on rem 261 Mich App 638; 684 NW2d 369 (2004), *People v Gulley*, 66 Mich App 112; 238 NW2d 421 (1975), MCR 6.005(E). The denial of counsel of choice is a structural constitutional error mandating automatic reversal. *Fett*, *Supra*.

Defendant's Brief at p. 23 (docket no. 1-5). In footnote 2, the Michigan Court of Appeals noted that

counsel erroneously cited MCR 6.005(E):

> FN2. Defendant's reliance on MCR 6.005(E) is misplaced. That rule addresses a trial court's obligation to advise a defendant of the right to counsel where the defendant decides to waive the assistance of counsel. Because defendant never waived his right to counsel, the rule is not applicable.

*People v. Thomas*, No. 278956, slip op. at p. 4.

Petitioner contends that appellate counsel's reliance on MCR 6.005(E) "as the correct rule in addressing trial court's obligations in the Court of Appeals brought drastic consequences." *See* Motion for relief from judgment at p. 48 (docket no. 1-9).

"Appellate counsel's performance is judged under the same standard for evaluating trial counsel's performance found in *Strickland*." *Mapes v. Tate*, 388 F.3d 187, 191 (6th Cir. 2004). Thus, to establish ineffective assistance of appellate counsel, it must be shown that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to render the trial unfair and the result unreliable. *Id.* Here, the Michigan Court of Appeals found that petitioner's counsel erroneously relied on MCR 6.005(E). The Court does not consider this single citation error in a brief as establishing that appellate counsel was deficient. MCR 6.005(E) was the last of the eight authorities cited to support the proposition that a financially able criminal defendant has the right to retain counsel of his choice. The Michigan Court of Appeals did not reject this general proposition asserted by appellate counsel, but simply pointed out an erroneously cited court rule in a footnote.

Furthermore, even if this Court were to construe this single citation error so broadly as to establish that appellate counsel was deficient, petitioner was not prejudiced. Contrary to petitioner's claim, appellate counsel's citation of this court rule did not bring about "drastic consequences." Counsel's cited seven other authorities in support of this legal proposition. Despite counsel's best efforts to frame an argument, the record did not support plaintiff's claim that the trial court violated his right to have the retained counsel of his choice. Accordingly, this claim of ineffective assistance of appellate counsel should be denied.

### 2.      Failure to raise Fifth Amendment claim

Finally, petitioner contends that appellate counsel was ineffective for failing to raise his Fifth Amendment claim on appeal, i.e., that trial counsel did not move suppress his statement. *See* Motion for relief from judgment at p. 49 (docket no. 1-9).  As discussed, petitioner's claims of ineffective assistance of trial counsel were meritless.  Appellate counsel cannot be ineffective for failing to raise meritless or futile arguments on appeal.  *See Coley*, 706 F.3d at 752; *Sanders*, 165 F.3d at 253; *Ludwig*, 162 F.3d at 459;  *Lilly*, 988 F.2d at 786.  Accordingly, this claim of ineffective assistance of appellate counsel should be denied.

### V.      Recommendation

I  respectfully  recommend that petitioner's habeas petition be **DENIED**.  Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated:  July 3, 2014                              /s/ Hugh W. Brenneman, Jr.
                                                            HUGH W. BRENNEMAN, JR.
                                                            United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).